**James Tyree RALPH, Jr., a Minor Suing by His Next Friend and Mother, Wei C. RALPH**

v.

**Huba NAGY, M.D.**

No. 3:89–0027.

United States District Court, M.D. Tennessee, Nashville Division.

Oct. 16, 1990.

Randall L. Kinnard, Randall L. Kinnard
& Associates, Nashville, Tenn., and John R.

Bradley, Hendersonville, Tenn., for plaintiffs.

Cynthia Berry, Ward DeWitt, Jr., Trabue, Sturdivant & DeWitt, Nashville, Tenn., for defendant.

Jim Creecy and Jerry Taylor, Nashville, Tenn., intervenor.

## MEMORANDUM

WISEMAN, Chief Judge.

On September 28, 1990, this Court held a hearing on Plaintiff's Motion For A Ruling That T.C.A. § 29–26–115(b) Will Not Preclude The Testimony Of Two New York Physicians In This Case. Having denied plaintiff's Motion from the bench, the Court issues this Opinion explaining the reasons for denying the requested relief.

### I.

The underlying action is a medical malpractice claim for injuries of a minor, James Tyree Ralph, allegedly arising out of prenatal care, labor, and delivery care. As part of the plaintiff's burden of proof in this case, the plaintiff will have to show by a preponderance of evidence that the conduct of the defendant was a proximate cause of injuries to the Ralph child. The plaintiff contends that the baby sustained a loss of oxygen over several hours during active labor and before delivery, and that this loss of oxygen caused the child to sustain his brain injury and to have other consequential damages. *See* Affidavit of Randall L. Kinnard, Exhibit A to Plaintiff's Motion, at p. 2.

The plaintiff readily admits that two physicians from North Carolina are available to address the standard of care and breach of the standard of care elements of the malpractice cause of action. Plaintiff further admits that these same North Carolina physicians are competent to complete the *prima facie* case by testifying on the causation element. However, plaintiff's position is that this Court should allow two New York physicians to testify on causation, as they are the "appropriate" witnesses because their training, education, and experience on the question of causation will allow the plaintiff to produce a "convincing and irresistible case to the jury." *Id.* at 3.

Neither one of the two proposed New York expert witnesses is licensed to practice in Tennessee or a state contiguous to Tennessee and never has been. T.C.A. § 29–26–115(b) provides as follows:

No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a) unless he was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make his expert testimony relevant to the issues in the case and had practiced this profession or specialty in one of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection when it determines that the appropriate witnesses otherwise would not be available.[1]

Plaintiff has made two major arguments to this Court in support of the Motion to allow the New York doctors to testify. First, plaintiff points to the waiver language at the end of § 29–26–115(b) and urges this Court to conclude that "the appropriate witnesses otherwise would not be available" unless the Court allows the New York physicians to testify on causation.

---

1. T.C.A. § 29–26–115(a) states as follows:
In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Second, the plaintiff argues that the Tennessee statute is unconstitutional as it applies to causation-only experts, under the due process and equal protection clauses of the United States Constitution.

## II.

### A.

■ At the hearing on this Motion, the parties addressed a question which raises a fundamental threshold concern before this Court. Under the *Erie* doctrine [2] a federal court sitting in diversity is obligated to apply the substantive law of the forum state. *Marrical v. Detroit News, Inc.*, 805 F.2d 169, 171–72 (6th Cir.1986); *United States v. Anderson County, Tenn.*, 761 F.2d 1169, 1173 (6th Cir.), *cert. denied*, 474 U.S. 919, 106 S.Ct. 248, 88 L.Ed.2d 256 (1985). Plaintiff, however, would have this Court hold, first, that § 29–26–115(b) is a procedural rule, and, second, that, therefore, the Federal Rules of Evidence govern the competency of the two New York physicians to testify in this lawsuit. In particular, plaintiff refers this Court to Rule 702 of the Federal Rules of Evidence, which sanctions testimony by any expert, regardless of geographic practice, who is qualified by "knowledge, skill, experience, training, or education . . ." and whose knowledge will assist the trier of fact "to understand the evidence or to determine a fact in issue. . . ."

Counsel for the Defendant, Huba Nagy, M.D., urges this Court to find that the Tennessee statute in issue is substantive, and, therefore, under *Erie* this Court must apply the statute and the Tennessee case-law interpreting it without regard to any federal rule. Defendant cites the case of *DiAntonio v. Northampton–Accomack Memorial Hospital*, 628 F.2d 287 (4th Cir. 1980), in which the Fourth Circuit held that the Virginia Medical Malpractice Act's notice requirement and provision for panel review were so "intimately bound up" with the rights and obligations being asserted as to require their application in federal courts under the *Erie* doctrine. *Id.* at 290. By analogy, defendant argues that

§ 29–26–115(b), which details how the substantive elements in a medical malpractice claim may or may not be proved with expert testimony, is "intimately bound up" with § 29–26–115(a), which sets forth the three substantive elements necessary to prove a medical malpractice claim, and that this Court, sitting in diversity, must apply section (b) as substantive state law.

This Court refuses to adopt either party's theory. The "contiguous state rule" at issue in this Motion is entirely different than the notice and panel review provisions deemed substantive by the Fourth Circuit in *DiAntonio*. It does not present a circumstance "in which a question of admissibility of evidence is so intertwined with a state substantive rule that the state rule . . . will be followed in order to give full effect to the state's substantive policy." *DiAntonio*, 628 F.2d 287, 291 (quoting 9 C. Wright & A. Miller, *Federal Practice and Procedure:* Civil § 2405 at 326–27 (1971)). Moreover, as discussed further below, because a specific Federal Rule of Evidence addresses the question of what law should govern the competency of expert witnesses in cases involving state substantive law, this Court is inclined to view the "contiguous state rule" as procedural. However, although this Court sides more with the plaintiff on the substantive-procedural distinction, this Court does not accept the plaintiff's argument that Federal Rule of Evidence 702 dictates admitting the two New York physicians' testimony on causation.

Federal Rule of Evidence 601 specifically addresses the question before this Court, and, as this Court is of the view that a "specific" statutory provision generally trumps a more "general" provision, this Court holds that Federal Rule of Evidence 601 governs on the question of what law applies to decide plaintiff's Motion. Rule 601 provides the following:

Every person is competent to be a witness except as otherwise provided in these rules. However, in civil actions and proceedings, with respect to an ele-

**2.** *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58    S.Ct. 817, 82 L.Ed. 1188 (1938).

ment of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law.

Plaintiff seeks to introduce the two New York physicians to testify as experts on the question of causation, one of the three essential elements of a medical malpractice cause of action under Tennessee law. Therefore, according to Rule 601, Tennessee law applies, including the "contiguous state" limitation set forth in § 29–26–115(b).

At least one federal district court in Tennessee has indicated its concurrence with this Court's reasoning. In *Crumley v. Memorial Hospital, Inc.*, 509 F.Supp. 531 (E.D.Tenn.1978), *aff'd*, 647 F.2d 164 (6th Cir.1981), the court, in a footnote, explained that "the competency of Dr. [____] as a witness is to be determined in accordance with Tennessee law ..." (citing Rule 601). *Id.* at 532, n. 2.[3] The Sixth Circuit twice has broached the question of whether Federal Rule of Evidence 601 or 702 applies in a situation like the one before this Court, but in each case the court declined to decide the issue.[4] In *Ward v. U.S.*, 838 F.2d 182, 187–88 (6th Cir.1988), the Sixth Circuit laid out the two countervailing views: (1) that of the *Crumley* court and the Tenth Circuit in *LeMaire v. United States*, 826 F.2d 949, 954 (10th Cir.1987), that under Federal Rule of Evidence 601, when state law provides the substantive law, compe-

tency of witnesses is also determined by state law, and (2) that of the Fifth Circuit in *Dawsey v. Olin Corp.*, 782 F.2d 1254, 1262 (5th Cir.1986), that Federal Rule of Evidence 702 governs expert testimony and therefore state law is inapplicable.[5] Because this Court views Rule 601 as more closely applicable than Rule 702 to the present issue involving the competency of the New York doctors to testify in a malpractice case involving questions of Tennessee law, this Court holds that Rule 601 controls in determining this Motion. Thus, this Court must examine § 29–26–115(b) to determine whether plaintiff's New York physicians are entitled to a waiver of the geographic requirements.

## B.

■ In diversity cases, federal courts must apply the law of the state as pronounced by its highest court. *General Ins. Co. of America v. Lowry*, 570 F.2d 120, 121 (6th Cir.1978). A recent decision by the Tennessee Supreme Court makes clear that the geographic limitations of T.C.A. § 29–26–115(b) apply to an expert witness in a medical malpractice action who testifies only as to the cause of plaintiff's injuries. *Payne v. Caldwell*, 796 S.W.2d 142 (Tenn.1990). Thus, plaintiff focuses on the waiver language at the end of § 29–26–115(b) and asks this Court to find that the geographic requirements should be

---

**3.** In *Miller v. United States*, the United States District Court For the Western District of Tennessee, in a one-page order, denied the defendant's motion to exclude a particular doctor's testimony because he did not practice in Tennessee or in a contiguous bordering state. The court held that T.C.A. § 29–26–115 is *procedural*, that it "does not apply to matters pending in the United States District Court, and that the Federal Rules of Evidence apply in this case...." *Miller*, No. 82–2610–M (W.D.Tenn. May 5, 1983).

Although the court did not articulate *which* Federal Rule of Evidence applied (i.e., Rule 601 or 702), its holding that the Tennessee statute was inapplicable and that the doctor could testify strongly suggests that it applied Rule 702 (because Rule 601 would require the court to apply the Tennessee statute).

**4.** Implicit in framing the question in terms of which of the two *federal* rules applies is the Sixth Circuit's recognition that questions involv-

ing the competency of expert witnesses to testify in a diversity action are *procedural* in nature, and thus governed by the Federal Rules.

**5.** The second time the Sixth Circuit addressed this same issue was in *Hanson v. Parkside Surgery Center*, 872 F.2d 745 (6th Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 349, 107 L.Ed.2d 337 (1989) in which the court noted:

After oral argument was heard in this case, our court addressed but did not decide the question of the relationship of Fed.R.Evid. 601 ("General Rule of Competency") and Fed.R.Evid. 702 ("Testimony by Experts") where a state's statute provides that certain individuals are incompetent to testify as experts. [The court then cites to the *Ward* case]. Because neither party has raised the issue of Dr. [____]'s competency as an expert, we again decline to consider that question.

waived with respect to the two New York physicians because "the appropriate [causation] witnesses otherwise would not be available."

■ This Court realizes that the waiver provision in § 29–26–115(b) places "some discretion with the trial court to allow or disallow testimony in the interest of equity and justice." *See Pyle by Pyle v. Morrison*, 716 S.W.2d 930, 933 (Tenn.App.1986). This Court also agrees with the Tennessee Court of Appeals that the statute does not allow the trial court to mechanically "even up the stack" of witnesses on both sides. *Id.* Despite the discretion allowed this Court by § 29–26–115(b), this Court has concluded that in this case the interest of equity and justice does not dictate waiving the geographic requirements as to the New York physicians.

Plaintiff's counsel, at the hearing on this Motion and in his pleadings, admits that the two North Carolina physicians, who meet the competency requirements of § 29–26–115(b) and who have been available to testify on behalf of the plaintiff for some time, can provide him with the expert testimony necessary to make out his *prima facie* medical malpractice claim—including the element of causation. Plaintiff's counsel explains that he wishes to call the New York experts for "medical icing on the cake." Plaintiff's Motion, p. 6. He further contends that although the two North Carolina physicians are very strong in their opinions on the standard of care and breach elements of the claim, "their opinions that the defendant caused injuries to the child *will not stand* on the *same footing as* the *defense* expert witnesses who are more highly trained on that particular subject matter." Affidavit of Randall L. Kinnard, Exhibit A to Plaintiff's Motion, at p. 3. This Court refuses to deem the North Carolina physicians "inappropriate" witnesses when, according to plaintiff's own counsel, they clearly can testify sufficiently on the issue of causation to make out the *prima facie* case. Therefore, because plaintiff has "appropriate" witnesses on the issue of causation in the two North Carolina physicians, the waiver provision may not be in-

voked to allow the plaintiff to "ice his cake" with the testimony of the New York physicians.

As the recent *Payne* decision makes clear that *any* expert witness who testifies on one of the essential elements of a malpractice cause of action is subject to the geographic limitations in § 29–26–115(b), and as this Court has concluded that a waiver is not justified under these facts, plaintiff's Motion to allow the testimony of the New York physicians must be denied.

## C.

■ It is necessary to dispose briefly of plaintiff's argument that Dr. Cooke, one of the two New York physicians, was a "treating physician" of the Ralph child and as such cannot be deemed an expert subject to § 29–26–115(b). Plaintiff relies on the case of *Alessio v. Crook*, 633 S.W.2d 770 (Tenn. App.1982), in which the court held that the treating surgeon of the plaintiff, who had been listed as an expert witness by the defendant, was not an expert under T.R. C.P. Rule 26. The court distinguished between an expert who is employed for litigation and a person who was "an actor or viewer with respect to transactions or occurrences that were the subject matter of the lawsuit." *Id.* at 780. Plaintiff urges this Court to conclude that Dr. Cooke falls within the latter definition.

This Court rejects plaintiff's argument that Dr. Cooke's alleged "treating" status puts him outside the ambit of the "contiguous state rule" set forth in § 29–26–115(b). Plaintiff clearly wishes to call both New York physicians to testify on causation, and this type of expert testimony is expressly included in the statute. Moreover, in *Alessio* the doctor actually had participated in the medical procedure in issue in the lawsuit; in contrast, Dr. Cooke did not participate in the prenatal care or delivery of the Ralph child. Finally, it is clear to this Court that plaintiff's underlying motive in offering this argument is to try to make an end run around the contiguous state rule as it applies to experts. This Court will not allow such a move.

### D.

Apart from the waiver issue, plaintiff's second major ground for bringing this Motion is based on the United States Constitution. Plaintiff argues that T.C.A. § 29–26–115(b) is unconstitutional as applied to causation-only expert witnesses under the due process and equal protection clauses of the United States Constitution.

As no fundamental right or suspect class is involved in the application of § 29–26–115(b), the appropriate standard of review in both constitutional challenges is the rational basis test. Under this test, "a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961).[6]

At the hearing on this Motion, counsel for the defendant and the Tennessee Attorney General offered several rational bases for the Tennessee General Assembly's enactment of T.C.A. § 29–26–115(b). First, the legislative intent of the Tennessee Medical Malpractice Act to remedy the problem of unavailability of malpractice insurance or extremely high malpractice insurance premiums arguably is served by the contiguous state rule's prevention of "full time" experts (also known as "hired guns") commercializing the litigation process. The Legislature rationally could have concluded that the contiguous state rule was a proper means of avoiding potentially less reliable and trustworthy professional witnesses and thereby enhancing the legislative purpose of cost containment by insuring more accurate and reasonable jury verdicts. Moreover, the geographic limitations on expert witnesses help hold down the cost of litigation in that the expenses of distant experts would be greater than those of "local" experts.

The Tennessee Supreme Court's recent decision in *Payne* provides another possible rational basis for the statute, even as it applies to "causation only" witnesses. Al-

though the court did not specifically address the constitutional issue, it observed that "[t]he proof of each element in a medical malpractice action is so entwined that it is difficult, if not impossible, for a witness to testify on the issue of causation without commenting, either expressly or tacitly, on the standard of care or whether or not it was breached." *Payne v. Caldwell*, 796 S.W.2d at 143. The court concluded: "[W]e see nothing unusual or illogical in the inclusion of all three elements in the limitations on competency of witnesses set forth in subsection (b)." *Id.* at 143. This language strongly suggests that the present Tennessee Supreme Court would uphold the statute under the rational basis test, even if the statute was challenged solely as to its application to "causation only" experts.

Perhaps the most persuasively articulated rational basis for § 29–26–115(b) appears in *Sutphin v. Platt*, 720 S.W.2d 455, 458 (Tenn.1986), in which the Tennessee Supreme Court upheld the statute under the rational basis test. The court explained its position as follows:

> In our opinion, any doubt as to the constitutionality of T.C.A. § 29–26–115(b) was laid to rest by a provision within the statute itself. The act vests the trial judge with the authority to waive the contiguous state limitation upon a proper showing that an appropriate witness would not otherwise be available. The statute, therefore, contains a "safety valve" for those situations in which a party is unable to locate a qualified expert within this state or one of our bordering states.

Although the Court recognizes that decisions by the Tennessee Supreme Court are not controlling in this federal constitutional challenge, this Court agrees with the reasoning of the Tennessee Supreme Court that the waiver provision effectively acts as a "constitutional safety valve." This

---

**6.** In upholding the same Tennessee statute against a due process and equal protection challenge, the Tennessee Supreme Court articulated the proper standard of review as follows: "If the court is able to conceive of a rational basis for

the statute that is reasonably related to a legitimate state purpose, the court cannot further question the wisdom of the legislation." *Sutphin v. Platt*, 720 S.W.2d 455, 457 (Tenn.1986).

safety valve was available for use in this case if the Court had determined that waiver of the geographic requirements was necessary to prevent any unconstitutional deprivation. However, as addressed already, this Court has found waiver was not dictated.

In light of the plausible rational bases discussed above, especially the "constitutional safety valve" effect of the waiver language, this Court must conclude T.C.A. § 29–26–115(b) is constitutional under both due process and equal protection analysis.

### III.

This Court has found that, pursuant to Federal Rule of Evidence 601, the issue presented by this Motion—whether the two New York physicians may testify in this medical malpractice suit—is governed by T.C.A. § 29–26–115(b). Having determined that a waiver of the geographic requirements set forth in § 29–26–115(b) is not appropriate given these facts, and that the statute is constitutional under the due process and equal protection clauses of the United States Constitution, this Court denies plaintiff's Motion For A Ruling That T.C.A. § 29–26–115(b) Will Not Preclude The Testimony of Two New York Physicians.